IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


TRACY BERNARD WILLIAMS                                                    PLAINTIFF


          v.                        Civil No. 4:10-CV-04085


TRACEY SMITH; and SONYA
SMITH                                                                     DEFENDANTS

TRACY BERNARD WILLIAMS                                                    PLAINTIFF


          v.                        Civil No. 4:10-CV-04194


OFFICER ADAMS; OFFICER
WILKERSON; SGT. WELCH;
COPR. LAFAYETTE; WARDEN
GARY TURNER; and NURSE
WILLIAMS                                                                  DEFENDANTS


**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

        Plaintiff, Tracy Williams, currently an inmate of the Arkansas Department of

Corrections, Ouachita River Unit in Malvern, Arkansas, filed this civil rights action under 42

U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis*.  Plaintiff filed Civil No. 4:10-cv-

4085 on June 17, 2010 and Civil No. 4:10-cv-4194 on December 30, 2010.  These actions were

consolidated, under the lead case Civil No. 4:10-cv-4085,  by order entered on September 29,

2011.  ECF No. 55.[1]

---

        [1] All docket entries cited herein refer to the lead case Civil No. 4:10-cv-04085 unless
otherwise noted.

The events at issue in this case occurred while Plaintiff was incarcerated in the Miller County Detention Center ("MCDC") in Texarkana, Arkansas.  Separate Defendant Nurse Williams (hereinafter "Nurse Williams") filed a Motion for Summary Judgment (ECF No. 57); Brief in Support (ECF No. 58); and Statement of Facts (ECF No. 59).  Separate Defendants, Gary Turner, Sonya Smith, Tracey Smith, Golden Adams, Jason Wilkerson, Kelli Lafayette, and Johnny Welch (collectively "Separate Defendants"), also filed a Motion for Summary Judgment (ECF No. 60), Brief in Support (ECF No. 61), and Statement of Facts (ECF No. 62).  Plaintiff responded to both Motions with one Response.  ECF No. 67.  Nurse Williams filed a Reply.  ECF No. 68.  Plaintiff filed a Sur-Reply.  ECF No. 69.  The Motions are now ready for decision.

## I.    BACKGROUND

As this case is before the Court on Nurse Williams and Separate Defendants' Motions for Summary Judgment, the Court will present the facts as alleged by Plaintiff, the non-moving party.  Plaintiff has brought this action against all Separate Defendants and Nurse Williams in both their official and individual capacities.  ECF No. 1, Civil No. 10-4085; ECF No. 1, Civil No. 10-4194.  It is unclear from the record whether Plaintiff was a pretrial detainee or a convicted prisoner during the time periods at issue.

### A.    Complaint Case No. 10-4085

On June 17, 2010, Plaintiff filed his first Complaint.  ECF No. 1, Civil No. 10-cv-4085 (hereinafter "First Complaint").  Plaintiff named Corporal Tracey Smith (hereinafter "Corporal Smith") and Officer Sonya Smith (hereinafter "Officer Smith") as Defendants in the First Complaint.  Plaintiff alleges that on May 22, 2010, Corporal Smith and Officer Smith subjected

him to excessive force and Nurse Williams and Separate Defendant Warden Gary Turner (hereinafter "Warden Turner") retaliated against him.[2]

On May 22, 2010 between 4:40 and 7:25 p.m., Plaintiff was involved in an incident with Corporal Smith and Officer Smith.  First Complaint, p. 11.  Corporal Smith responded to Plaintiff's barracks over an issue with the television.  While Corporal Smith was inside the barracks, Plaintiff laughed out loud.  Corporal Smith ordered Plaintiff into the hallway and Plaintiff complied.  Once in the hallway, Plaintiff attempted to explain that he was laughing at another inmate and not at Corporal Smith, but Corporal Smith ordered him to be quite, get up against the wall, and put his hands behind his back.  Plaintiff complied.  Corporal Smith then shoved Plaintiff into the wall "hard."  Plaintiff told Corporal Smith he was hurting him but Corporal Smith continued "throwing [Plaintiff] harder into the wall."  First Complaint, p. 5.  Corporal Smith then took Plaintiff to "R&D," placed him in a cell, and sprayed him with pepper spray.  First Complaint, p. 5.  In a grievance to Warden Turner, Plaintiff stated that he was also dragged down the hallway by Corporal and Officer Smiths in cuffs and slammed into the wall headfirst.  First Complaint, p. 9.  Further, Plaintiff states he was sprayed with the pepper spray three (3) times.  First Complaint, p. 11.

After the May 22, 2010 incident, Plaintiff requested to see Nurse Williams because he could not see or breath and the hand cuffs were too tight.  First Complaint, p. 5.  Because of

_____

[2] The Court notes that Plaintiff only listed Corporal Smith and Officer Smith in Section IV of the Section 1983 Form used to file his First Complaint, however Plaintiff made several allegations against Nurse Williams and Warden Turner in the body of the First Complaint and named both individuals as Defendants in the case heading of his Second Supplement to First Complaint (ECF No. 50).  Therefore, the Court construes the First Complaint to state claims against both Nurse Williams and Warden Turner as Defendants.

the handcuffs, Plaintiff lost feeling in his left hand and his wrist was "very badly" swollen. First Complaint, p. 5.  Plaintiff was examined by the Nurse Williams when she delivered nightly medicine at 7:25 p.m., and she told Plaintiff she would write an injury report reflecting her findings.  First Complaint, pp. 5, 12.  Additionally,  Plaintiff has coughed up blood from the pepper spray and suffered sever chest pains.  First Complaint, p. 5.

Plaintiff sent grievances over the May 22, 2010 incident to Warden Turner, Sheriff Stovall and Captain Hartline.[3]  First Complaint, pp. 5-6.

Plaintiff also claims that Warden Turner and Nurse Williams are retaliating against him because of a previous Section 1983 lawsuit Plaintiff filed against them.  First Complaint, p. 11. Plaintiff alleges that Warden Turner is retaliating against him by not speaking with Plaintiff and hearing his side of the events of May 22, 2010.  First Complaint, p. 12.  Nurse Williams is retaliating by refusing to give Plaintiff an injury report on the injuries he suffered on May 22, 2010.  First Complaint, p. 12.  Finally, Plaintiff alleges that Warden Turner and Nurse Williams locked him in "Super Max" to prevent him from getting any "outside help" after the May 22, 2010 incident.   First Complaint, p. 13.

On September 29, 2010, Plaintiff filed his first Supplement to First Complaint.  ECF No. 8.  Plaintiff claims two legal letters he sent to the Court were "stopped," and he also provided additional facts regarding the May 22, 2010 incident and his retaliation claims against Warden Turner and Nurse Williams.  ECF No. 8.  Plaintiff does not name any individual he believes actually stopped his letters, but he does "believe that the Warden, Mr. Turner and the

---

[3] Plaintiff does not name Sheriff Stovall or Captain Hartline, nor does he make any allegations against these men in either his First or Second Complaint.  ECF No. 1, Civil No. 10-4194; ECF No. 1, Civil No. 10-4085.

Nurse, Miss. Williams had alot(sic) to do with [it]."  ECF No. 8, p.1.

Regarding the May 22, 2010 incident, Plaintiff claims he was dragged by his cuffs from "West A Unit" to "R&D" and the cuffs cut him "all the way to the white meat."  ECF No. 8, p. 4.  Corporal Smith also took the mask Plaintiff wears[4] off his face and slapped Plaintiff's glasses off in order to spray Plaintiff in the eyes with the pepper spray.  The slap to the face broke one side of Plaintiff's "partial."  ECF No. 8, p. 4.

After the incident with Corporal Smith and Officer Smith, Nurse Williams told Plaintiff to take a shower and she would leave him eye drops but she failed to do so.  ECF No. 8, p. 3.  Additionally, Nurse Williams claimed she did not see the injuries Plaintiff suffered on May 22, 2010, but others could see the injuries.  ECF No. 8, p. 1.  Further, Nurse Williams and Warden Turner put Plaintiff in the "Super-Max," and took away his mat, writing material, and envelopes as punishment for indicating he wanted to file charges on Corporal Smith and Officer Smith over the May 22, 2010 incident.  ECF No. 8, pp. 2-3.

On July 21, 2011, Plaintiff filed a second Supplement to First Complaint claiming Nurse Williams retaliated against him by informing other inmates of his charges and asking them to "jump" Plaintiff.  ECF No. 50, p. 1.  Plaintiff alleges that after Nurse Williams was served with process in his second civil rights case against her she attempted to get Plaintiff's cell mates to "jump" him.  ECF No. 8, p. 2.  Plaintiff also request that the Court prevent Nurse Williams from handling his medication.  ECF No. 50, p. 3.

B.     Complaint Case No. 10-4194

---

[4] Plaintiff suffers from CML Leukemia—a terminal illness.  First Complaint, p. 5, 12. Plaintiff wears the mask to protect himself from contacting any illnesses the other inmates may be carrying.  ECF No. 8, p. 4.

On December 30, 2010, Plaintiff filed a second Complaint.  ECF No. 1, Civil No. 10-cv-4194 (hereinafter "Second Complaint").  Plaintiff named Officers Jason Wilkerson (hereinafter "Officer Wilkerson"); Officer Golden Adams (hereinafter "Officer Adams"); Sergeant Johnny Welch (hereinafter "Sergeant Welch"), Nurse Williams, and Corporal Kelli Lafayette (hereinafter "Corporal Lafayette") as Defendants in the Second Complaint.[5]  Plaintiff alleges Separate Defendants, Officers Wilkerson and Adams and Sergeant Welch, failed to protect him against another inmate, Stevie Evans ("Inmate Evans"), on October 30, 2010, and that Nurse Williams retaliated against him for filing a prior Section 1983 suit against her.

Inmate Evans was Plaintiff's cell mate at MCDC in October 2010.  On October 25, 2010, Plaintiff wrote a grievance to Sergeant Welch regarding Inmate Evans' behavior.  Second Complaint, pp. 5-6, 13.  On October 29, 2010, Plaintiff spoke with Sergeant Elloite and filed complaints against Inmate Evans based on his unruly conduct.  Second Complaint, p. 8.  Sergeant Elloite and Officer Wilkerson moved Inmate Evans from Plaintiff's cell and Plaintiff's barracks the same night.  Second Complaint, pp. 6, 8.  When Plaintiff woke up the morning of October 30, 2010, someone had returned Inmate Evans to Plaintiff's barracks, and Inmate Evans threatened Plaintiff through his cell door.  Second Complaint, p. 6.  Plaintiff informed Officers Wilkerson and Adams of Inmate Evans' threats but nothing was done.  Second Complaint, p. 8.  Later that same day, around 7:20, Inmate Evans "sucker punched" Plaintiff in his right ear.  Second Complaint, pp. 7, 11-12, 8.

Plaintiff claims that Nurse Williams told Inmate Evans and another inmate Kelly

---

[5] Plaintiff also named fellow inmates Stevie Evans and Kelly Hancock and Sergeant Elloite but these parties were dismissed by previous Orders.  ECF No. 12, Civil No. 10-cv-4194; ECF No. 26, Civil No. 10-cv-4194.

Hancock  that Plaintiff was incarcerated in MCDC because he rapped his daughter.  She was encouraging Inmate Evans to "jump" Plaintiff in retaliation for Plaintiff filing a prior Section 1983 suit against Nurse Williams.  Second Complaint, p. 6-7.  Plaintiff wrote Sergeant Welch a grievance regarding Nurse Williams' conduct on October 25, 2010.  Second Complaint, p. 13.

## II.    LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-2 (1986), and a fact is material if it affects the outcome of the case, i*d.* at 248.  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson,* 477 U.S. at 256; *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.    DISCUSSION

A.    Official and Individual Capacity

Plaintiff claims all Separate Defendants and Nurse Williams violated his constitutional rights in both their official and individual capacities.

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both.  In *Gorman v. Bartch,* 152 F.3d 907 (8th Cir.1998), the Eighth Circuit Court of Appeals (hereinafter "Eighth Circuit") discussed the distinction between individual and official capacity suits.  As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available.  *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).  Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself.  *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.  *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d at 914.

Separate Defendants argue Plaintiff has failed to show that a policy or custom of Miller County was the moving force behind any alleged constitutional violations.  ECF No. 61, p. 4-5. Plaintiff states in his Response that he is suing Separate Defendants and Nurse Williams in both their individual and official capacities, but he then states he does not contend a custom, policy, or practice of Miller County resulted in the deprivation of his constitutional rights.  ECF No. 67, ¶ 32-3.  Plaintiff goes on to explain how "some staff members feel they are above the laws of the land and can get away with violating people['s] constitutional rights . . . ."  ECF No. ¶ 33.

8

Plaintiff has not proffered any facts or allegations that a custom or policy of Miller County violated his federal constitutional rights. Accordingly, there is no basis on which Miller County may be held liable. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–91 & n. 55, 694 (1978) (plaintiff seeking to impose liability on local government body under Section 1983 must show official policy or widespread custom or practice of unconstitutional conduct that caused a deprivation of constitutional rights).

Accordingly, I recommend that Separate Defendants' Motion for Summary Judgment (ECF No. 60) and Nurse Williams' Motion for Summary Judgment (ECF No. 57) be **GRANTED** as to all official capacity claims.

Additionally, Corporal Lafayette argues any individual claims against him should be dismissed and he should be dismissed from this suit entirely because he is not mentioned by Plaintiff anywhere in the body of the First or Second Complaint. ECF No. 61, p. 6-7.

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell,* 436 U.S. at 694. "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). In other words, Corporal Lafayette cannot be held liable merely because he supervises the individuals allegedly responsible for violating Plaintiff's constitutional rights. *Id.; see also Mark v. Nix,* 983 F .2d 138, 139–40 (8th Cir. 1993) (Section 1983 liability requires some personal involvement or responsibility). There is no allegation that Corporal Lafayette was personally involved in any

9

way in the events complained of by Plaintiff. Further, Plaintiff did not offer any facts or allegations in his Response  indicating Corporal Lafayette played a role in any of the conduct Plaintiff complains of in his First and Second Complaint.

Accordingly, I recommend that Separate Defendants' Motion for Summary Judgment (ECF No. 60) be **GRANTED** as to all claims against Corporal Lafayette in his individual capacity and that Corporal Lafayette be dismissed from this action.

B.    Exhaustion of Remedies

Defendants contend Plaintiff failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a).

As amended by the Prison Litigation Reform Act (hereinafter "PLRA"),  42 U.S.C. § 1997e(a) mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The Eighth Circuit recognizes that the PLRA requires exhaustion of administrative remedies even if the "available administrative remedies do not provide the precise, or full, relief sought." *Walker v. Maschner*, 270 F.3d 573, 577 (8th Cir. 2001) (citing *Booth v. Churner*, 532 U.S. 731, 738-39 (2001)).  It has been held that a grievance procedure contained in a handbook constitutes an available administrative remedy within the meaning of § 1997e(a).  *Conception v. Morton,* 306 F.3d 1347, 1353 (3d Cir. 2002).  When all claims have not been exhausted, the case is subject to dismissal.  *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000).

Separate Defendants argue that Plaintiff's discovery responses prove that he never filed grievances on the issues in this suit other than the May 22, 2010 incident that lead to his excessive force claim.  ECF No. 61, Ex. C.  In Plaintiff's discovery response he states he "cannot list every grievance [he has] written at [MCDC]" but he has been saving them since December 2009.  Plaintiff list a few topics of grievances he filed: "from medical assists, to officer's taking my extra blanket, missing bring my meds." Plaintiff also states that the grievance forms were not signed or returned so he had to make his own copies.  ECF No. 61, Ex. C.

In his First Complaint, Plaintiff claims he has written Warden Turner, Sheriff Stovall, and Captain Hartline with no response.  First Complaint, p. 5-6.  Plaintiff also attaches to the First Complaint two Grievance Forms addressing the alleged excessive force.  Both of these Grievance Forms are dated, by Plaintiff, May 22, 2010 and neither contain a response from the warden or an officer.  First Complaint, p. 9-10.  Plaintiff attached two additional Grievance Forms to his Second Complaint.  The first is dated, by Plaintiff, October 30, 2010 and addresses the incident with Inmate Evans.  There is no response from the warden or an officer on this form.  The second Grievance Form is dated, by Plaintiff, October 25, 2010 and addresses Inmate Evans playing with the call button in cell six (6) and an allegation that Nurse Williams is telling the other inmates of Plaintiff's charges.  There is also no response noted on this form.  Second Complaint, p. 11-13.

The attached Grievance Forms, although unclear whether they were filed, address the May 22, 2010 excessive force incident, the Inmate Evans incident, and issues with Nurse Williams informing other inmates of Plaintiff's charges.  This leaves only his denial of medical

care claim and tampering with legal mail claim as unrepresented in the attached Grievance Forms.  However, Plaintiff has declared, under penalty of perjury, that he presented the facts relating to all his claims through the written grievance procedure at MCDC.  First Complaint, p. 2; Second Complaint, p. 2.

Clearly exhaustion is a prerequisite to asserting a claim.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  However, Separate Defendants have not supported their claim that Plaintiff failed to exhaust his administrative remedies with any affidavits or information on the handling of grievances at MCDC.  While the Court recognizes Plaintiff's interrogatory responses on the record, these response are insufficient to dispose of any genuine issue of material fact regarding Plaintiff's grievances.  Plaintiff appears to list only those grievances he remembers filing. Further, Plaintiff's declarations in his First and Second Complaint contradict the position taken by Separate Defendants that the only grievances filed are those listed by Plaintiff in his interrogatory responses.  Separate Defendants have not asserted, by affidavit or other appropriate means, that the Grievances Forms attached to Plaintiff's Complaints were not actually submitted or were the only ones submitted by Plaintiff.  Therefore, I decline to recommend dismissing this lawsuit on the grounds that Plaintiff did not properly exhaust his administrative remedies.

Accordingly, I recommend that Separate Defendants' Motion for Summary Judgment (ECF No. 60) be **DENIED** as to failure to exhaust defense.

C.     Retaliation

Plaintiff alleges that Nurse Williams and Warden Turner retaliated against him for filing a previous Section 1983 action.

In general, "[c]onduct that retaliates against the exercise of a constitutionally protected

12

right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber,* 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts,* 909 F.2d 1203, 1206 (8th Cir. 1990)). "Indeed, the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable." *Id.* Additionally, there is no independent injury requirement when retaliatory conduct is involved. *See Dixon v. Brown,* 38 F.3d 379, 380 (8th Cir.1994).

To prevail on his retaliation claim, Plaintiff must demonstrate: (1) that he engaged in protected activity; (2) that Nurse Williams and Warden Turner responded with adverse action that would "'chill a person of ordinary firmness' from continuing in the activity;" and (3) that the adverse action was motivated at least in part by the exercise of the protected action. *See L.L. Nelson Enterprise Inc. v. County of St. Louis, Mo.,* 673 F.3d 799, 807-8 (8th Cir. 2012) (quoting *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004)). "To avoid summary judgment, [Plaintiff] must submit 'affirmative evidence [of] retaliatory motive.'" *Lewis v. Jacks,* 486 F.3d 1025, 1029 (8th Cir. 2007) (quoting *Wilson v. Northcutt,* 441 F.3d 586, 592 (8th Cir. 2006)).

### i.    Denial of medical care

Plaintiff claims that Nurse Williams denied him medical care on May 22, 2010 in retaliation for a prior Section 1983 lawsuit Plaintiff filed against her.

Plaintiff has demonstrated that he engaged in protective activity by filing his prior Section 1983 case against Nurse Williams.  Inmates have a constitutional right to seek redress of grievances. *See e.g., Burgess v. Moore,* 39 F.3d 216, 218 (8th Cir.1994); *Sanders v. St. Louis County,* 724 F.2d 665, 666 (8th Cir. 1983) ("[A]n inmate's constitutional right of access to the courts cannot be impaired, either directly, by intercepting mail or prohibiting contact with

13

an attorney, or indirectly, by threatening or harassing an inmate in retaliation for filing lawsuits").

However, Nurse Williams presented evidence that Plaintiff's allegation that she denied him medical attention is factually untrue.  Nurse Williams argues Plaintiff cannot show she took any adverse action against him.  According to Nurse Williams' notes from May 22, 2010, she examined Plaintiff for injuries following the incident with Corporal and Officer Smiths and found "no apparent or obvious wounds, bruising or swelling noted to inmate at this time," and "no sign of distress."  ECF No. 58, Ex. A.  Nurse Williams also noted that she advised Plaintiff to take a shower to rinse off the pepper spray but he refused.  ECF No. 58, Ex. A.

Faced with this evidence, it is Plaintiff's burden to show specific facts in the record that create a genuine issue for trial as to whether Nurse Williams took adverse action against him by denying medical care.  *See Krenik v. County of LeSueur,* 47 F.3d 953, 957 (8th Cir. 1995).  Plaintiff may not rest upon mere allegations or denials, but must put forth specific facts showing there is a genuine issue for trial.  *Anderson,* 477 U.S. at 256.  The only response Plaintiff has to Nurse Williams' notes is his allegations that Nurse Williams is lying, that others witnessed his injuries, and his reference to similar allegations in prior court filings.  ECF No. 67, p. 9.

The Court recognizes that *pro se* pleadings should be liberally construed and held to less stringent standards when facing a motion for summary judgment.  *See Haines v. Kerner,* 404 U.S. 519, 520 (1972); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002).  However, even a *pro se* plaintiff "is not permitted to merely rest on his pleading but must instead set forth sufficient evidence from which a reasonable jury could find in his favor on

14

all elements of his claims." *Johnson v. Hamilton,* 452 F.3d 967, 972 (8th Cir. 2006). Plaintiff has failed to meet his burden by pointing the Court to any specific facts in the record that create a genuine issue for trial as to whether Nurse Williams took adverse action against him by denying him medical care.[6]

Accordingly, I recommend that Nurse Williams' Motion for Summary Judgment (ECF No. 57) be **GRANTED** as to Plaintiff's claims of retaliation regarding denial of medical care.

  ii. <u>Denial of injury report</u>

Plaintiff claims that Nurse Williams refused to provide him with his injury report, of the May 22, 2010 incident, in retaliation of the previous Section 1983 lawsuit Plaintiff filed against her.

Again, Plaintiff has demonstrated he engaged in protected activity by filing a Section 1983 claim against Nurse Williams. *See e.g., Burgess,* 39 F.3d at 218; *see also Sanders,* 724 F.2d at 666. Plaintiff also claims that he needed the injury report to file charges against Corporal Smith and Officer Smith for the May 22, 2010 incident. Finally, Plaintiff alleges Nurse Williams refusal to provide the report was in retaliation for Plaintiff filing a previous Section 1983 lawsuit against her.

Nurse Williams argues that Plaintiff cannot show whether her denial of the report was motivated by Plaintiff filing the prior Section 1983 lawsuit. Nurse Williams was not served with process in Plaintiff's prior Section 1983 lawsuit until May 28, 2010, and therefore, had no knowledge—in order to form a retaliatory motive—of the previous lawsuit at the time she

---

[6] Because the Court finds there is no genuine issue of material fact as to whether Nurse Williams took adverse action against Plaintiff, the Court need not address here Nurse Williams' additional arguments regarding retaliatory motive.

denied Plaintiff his May 22, 2010 injury report.  ECF No. 58, p. 6.

"To avoid summary judgment, [Plaintiff] must submit affirmative evidence [of] retaliatory motive." *Lewis,* 486 F.3d at 1029 (quoting *Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006)).  Plaintiff does not offer any facts in his Response to create an issue of fact regarding when Nurse Williams became aware of the previous lawsuit, nor does he offer any other evidence regarding Nurse Williams' motive in denying him the May 22, 2010 injury report.  I find there are no genuine issues of material fact as to whether Nurse Williams possessed a retaliatory motive in denying him the injury report.

Accordingly, I recommend that Nurse Williams' Motion for Summary Judgment (ECF No. 57) be **GRANTED** as to Plaintiff's claims of retaliation regarding denial of the injury report.

> iii.   Enticing inmates to attack Plaintiff

Plaintiff claims that Nurse Williams retaliated against him by telling Inmate Evans and Inmate Hancock of Plaintiff's charges and encouraging Inmate Evans to attack Plaintiff.

Again, Plaintiff has demonstrated he engaged in protected activity by filing a Section 1983 claim against Nurse Williams. *See e.g., Burgess,* 39 F.3d at 218; *see also Sanders,* 724 F.2d at 666.

It is undisputed that Inmate Evans attacked Plaintiff, however, the parties disagree over the cause of the attack.  Nurse Williams, in her affidavit, declares she did not inform Inmate Evans of Plaintiff's charges or encourage Inmate Evans to attack Plaintiff.  ECF No. 58, Ex. 1.  Nurse Williams argues that it was Plaintiff's own complaints logged against Inmate Evans that resulted in the attack.  ECF No. 58, p. 7.  Plaintiff declares in his Response, under penalty

of perjury, that he heard Nurse Williams inform Inmate Evans of his charges, and that the knowledge of his charges alone is enough to get him "jumped on."[7]  ECF No. 67, p. 17.

A genuine issue of material fact clearly exists as to whether Nurse Williams told Inmate Evans of Plaintiff's charges, and if she did, whether that information caused Inmate Evans to attack Plaintiff.  Furthermore, Nurse Williams was aware of Plaintiff's prior Section 1983 lawsuit against her by October 30, 2010—the day Inmate Evans' punched Plaintiff.  Moreover, given the nature of Plaintiff's charges, the Court finds a genuine issue of fact also exist as to Nurse Williams' motive in informing Inmate Evans of the charges, if she in fact did so.

Accordingly, given these issues of fact, I recommend that Nurse Williams' Motion for Summary Judgment (ECF No. 57) be **DENIED** as to Plaintiff's claim of retaliation regarding Nurse Williams enticing other inmates to attack Plaintiff.

Nurse Williams did not move for summary judgment on Plaintiff's claims that she and Warden Turner locked him in "Super-Max" and took away his mat, writing material, and envelopes as punishment for indicating he wanted to file charges on Corporal Smith and Officer Smith over the May 22, 2010 incident.  ECF No. 8, p. 2-3.  Additionally, Warden Turner did not move for summary judgment on the claims of retaliation against him.  Accordingly, I recommend these claims proceed as well.

D.    Failure to Protect

Plaintiff claims that Separate Defendants, Officer Wilkerson and Adams, and Sergeant Welch, violated his constitutional rights by failing to protect him from Inmate Evans.

---

[7]According to Plaintiff, Nurse Williams told Inmate Evans and Hancock that he rapped his daughter and there were rumors circulating among the inmate population that his daughter was only two (2) months old at the time of the raping.  Second Complaint, p. 6.

As noted above, the record is unclear as to Plaintiff's status at the time in issue here. However, the Eighth Circuit has noted that pretrial detainees are entitled to at least as much protection under the Eighth Amendment as convicted inmates, and applies the same failure to protect analysis under the Eight Amendment to claims brought by both pretrial detainees and convicted inmates. *Id.; see also Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011). The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "A prisoner's conditions of confinement, including the safety measures taken to protect prisoners, are subject to scrutiny under the Eighth Amendment." *Davis v. Oregon County, Mo.,* 607 F.3d 543, 548 (8th Cir. 2010) (citing *Kahle v. Leonard,* 477 F.3d 544, 550 (8th Cir. 2007)). Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *See Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998).

To prevail on his failure to protect claim, Plaintiff must: prove "he was incarcerated under conditions posing a substantial risk of serious harm." *Holden,* 663 F.3d at 341 (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). This is an objective requirement "to ensure the deprivation is a violation of a constitutional right." *Holden,* 663 F.3d at 341. "The second requirement is a subjective test; the defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Schoelch v. Mitchell,* 625 F.3d 1041, 1046 (8th Cir. 2010)(internal quotation marks and citation omitted). "An official's negligence alone is insufficient to meet the subjective component because the official must recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis,* 607 F.3d at 549 (internal quotation marks and citation omitted). Furthermore, "[c]laims under the Eighth Amendment require a compensable injury to be greater

18

than *de minimis,*" however, "[n]o clear line divides *de minimis* injuries from others." *Irving v. Dormire,* 519 F.3d 441, 448 (8th Cir. 2008).

Officers Wilkerson and Adams, and Sergeant Welch  argue that even if Plaintiff could prove that they were aware of a serious threat to the Plaintiff's safety, the punch by Inmate Evans is not sufficiently serious to amount to a constitutional violation.  Specifically, Plaintiff did not allege any physical injuries he suffered as a result of this "sucker punch," and therefore, he has not stated a failure to protect claim actionable under Section 1983.  ECF No. 61, p. 11.

In his Response, Plaintiff claims as a result Inmate Evans' "sucker punch" he suffered "scars" on the back of his ear and bleeding.  Also, Plaintiff suffered a headache he "couldn't get over" and was a "little dizzy for awhile."  ECF No. 67, ¶ 30.  Plaintiff did not receive any medical treatment from the injuries he suffered as a result of Inmate Evans' "sucker punch," and Plaintiff does not allege that he should have received any medical attention as a result of the "sucker punch."  ECF No. 67, ¶ 31.

While no clear line divides *de minimis* injuries from others, the case law on this issue is instructive.  *See e.g., Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (cracked dental plate, loose teeth, bruises, and swelling are greater than *de minimis* injuries); *Irving,* 519 F.3d at 448 ( a blow to the face causing two months of troubled breathing are greater than *de minimis* injuries); *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006) (relatively minor scrapes and bruises and a less-than permanent shoulder aggravation are *de minimis* injuries); *Wyatt v. Delaney,* 818 F.2d 21, 23 (8th Cir. 1987) (a light accidental blow to the face that caused two small scratches inside the prisoner's mouth are *de minimi*s *injuries*).

Plaintiff has alleged that he was punched one time in the ear and the resulting "scars,"

bleeding, headache, and dizziness did not require medical attention, nor did any of the injuries produce any lasting impact on Plaintiff's health.  I find Plaintiff has alleged only *de minimis* injuries, and therefore, his failure to protect claim fails as a matter of law.  *See Irving,* 519 F.3d at 448.

 Accordingly, I recommend that Separate Defendants' Motion for Summary Judgment (60) be **GRANTED** as to Plaintiff's failure to protect claim.

### E.     Excessive Force

Plaintiff alleges in his First Complaint that Corporal Smith and Officer Smith used excessive force against him on or about May 22, 2010.

Because the record does not indicate whether Plaintiff was a pretrial detainee or a convicted prisoner on May 22, 2010, I will apply the objective reasonableness standard applicable to pretrial detainees.[8]  In *Johnson–El v. Schoemehl,* the Eighth Circuit court noted that:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1871–72, 60 L.Ed.2d 447 (1979). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Id.* The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. As a pretrial detainee, [the plaintiff's] excessive-force claim is properly analyzed under the due process clause of the Fourteenth Amendment. *See Graham v. Conner,* 490 U.S. 386, 395 & n. 10 (1989) (due process clause protects pretrial detainee from force amounting to punishment).

*Johnson–El v. Schoemehl,* 878 F.2d 1043, 1048 (8th Cir. 1989).

The courts generally analyze excessive force claims of pretrial detainees in the same way

---

[8] Separate Defendants also argue the application of the objectively reasonable standard. ECF No. 61, p. 7.

as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001) ("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The relevant inquiry is whether the officials actions are "objectively reasonable in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Corporal Smith declares, in his affidavit, that Plaintiff was in a cell "instigating things with . . . other inmates" on October 30, 2010. Corporal Smith attempted to intervene, but Plaintiff became unruly and refused to leave the cell. Plaintiff was given the opportunity to leave the cell voluntarily and warned pepper spray would be used against him if he did not comply. Plaintiff continued to refuse so Corporal Smith sprayed him with the pepper spray and placed him in handcuffs. Corporal Smith concedes that Plaintiff may have "bumped into the wall" during the incident because Plaintiff was "behaving widely" after he was pepper sprayed. Plaintiff continued to struggle and fight after being placed in handcuffs but he was immediately taken down the hall to shower off the pepper spray. ECF No. 61, Ex. A.

In his Response, Plaintiff declares, under penalty of perjury, that he was not instigating things with other inmates. ECF No. 67, ¶ 3. Plaintiff also states he complied with Corporal Smith's requests and tried to explain what was happening in the cell, but Corporal Smith began throwing him against the wall face first, took him to "R&D," and sprayed him with pepper spray three (3) times. ECF No. 67, ¶¶ 4-5. Plaintiff was in handcuffs when Corporal Smith sprayed him with pepper spray the first time and Corporal Smith also sprayed Plaintiff inside the cell at "R&D." ECF No. 67, ¶ 6.

Clearly there are genuine issues of material fact on this claim.  Plaintiff and Corporal Smith's versions of the events differ dramatically.  At the summary judgment stage, I am not free to adopt one parties' version of the events over another.  Furthermore, even if Plaintiff's injuries are characterized as *de minimis,* this does not foreclose an excessive force claim.  The proper focus of the inquiry is on the amount of force used not the extent of the injuries.  *See e.g., Chambers v. Pennycook,* 641 F.3d 898, 906 (8th Cir. 2011) ("[I]t is logically possible to prove an excessive use of *force that caused only a minor injury,* and a rule that forecloses a constitutional claim in that circumstance focuses on the wrong question").

Accordingly, I recommend Separate Defendants' Motion for Summary Judgment (ECF No. 60) be **DENIED** as to Plaintiff's excessive force claim against Corporal Tracey Smith.

As to Officer Smith, while Plaintiff in his First Complaint, alleges she took part in dragging him down the hallway, Plaintiff states, in his Response, "I am not alleg[ing] that Sonya Smith subjected [me to] excessive force . . .."  ECF No. 67, ¶¶2.  Plaintiff does not make any other allegations or state any facts in his First or Second Complaint or Response to support any other claim against Officer Smith.

Accordingly, I recommend Separate Defendants' Motion for Summary Judgment (ECF No. 60) be **GRANTED** as to Plaintiff's excessive force claim against Officer Sonya Smith and Officer Sonya Smith be dismissed from this action.

F.    Medical Care

Plaintiff claims that he was denied medical care on May 22, 2010.

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard.  *See Butler v. Fletcher,* 465

F .3d 340, 344 (8th Cir. 2006).  To prevail on an Eighth Amendment claim, Plaintiff must prove that Separate Defendants and Nurse Williams acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).  The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'"  *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct."  *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation."  *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted).  An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment."  *Id.*  Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference.  *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

23

Plaintiff appears to make two related claims here: (1) that he was denied medical care because Nurse Williams did not leave him eye drops or a band-aid for his wounds; and (2) that his medical care was delayed because Nurse Williams did not come to examine him until "nightly meds."  ECF No. 67, ¶ 12.

i.    Denial of medical care

Separate Defendants argue that Plaintiff was not denied medical care.  Nurse Williams examined Plaintiff on the same day as the incident and found no signs of injury, therefore, Plaintiff cannot show that he had an objectively serious medical need.  ECF No. 61, p. 9.

Nurse Williams noted in her nurses notes on May 22, 2010 that Plaintiff had "no apparent or obvious wounds, bruising, or swelling," and "no sign of distress."  Nurse Williams also noted that she advised Plaintiff to shower to remove the pepper spray from his skin but he refused.  ECF No. 58, Ex. 1.

The only response Plaintiff has to Nurse Williams' nurses notes is his allegations that she is lying, that others witnessed his injuries, and his reference to similar allegations in prior pleadings.  ECF No. 67, p. 9.  As discussed above, Plaintiff may not rest upon mere allegations or denials, but instead must put forth specific facts showing there is a genuine issue for trial. Even though Plaintiff is proceeding *pro se,* he may not merely rest on his pleadings in the face of such evidence.  *Supra,* pp. 13-4.  Plaintiff has not met his burden of pointing to specific facts creating a genuine issue for trial as to whether he suffered an objectively serious medical need.

Further, the record indicates only that Plaintiff disagrees with Nurse Williams' assessment and treatment of his injuries.  Plaintiff believes his injuries were more severe than

what Nurse Williams indicated in her nurses notes, and that she should have provided him with eye drops and a band-aid. However, the appropriate treatment for a given medical condition involves the exercise of medical judgment, and Plaintiff's mere disagreement with the medical judgment of Nurse Williams is not the basis for Section 1983 liability. *See e.g., Meuir v. Greene County Jail Emp.,* 487 F.3d 1115, 1118-9 (8th Cir. 2007); *see also Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992) ("[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation."). Medical malpractice alone . . . is not actionable under the Eighth Amendment." *Popoalii,* 512 F.3d at 499. Therefore, Plaintiff's claim he was denied medical care fails as a matter of law.

ii.     Delay of medical care

The incident with Corporal Smith and Plaintiff occurred between 4:40 and 7:25. First Complaint, p. 11. The record shows, through Nurse Williams' notes, that Nurse Williams examined Plaintiff at approximately 5:15 on May 22, 2010 at the request of Corporal Smith. ECF No. 61, p. 9. In his Response, Plaintiff disputes the time in Nurse Williams' notes, stating she did not examine him until 7:25 p.m. ECF No. 67, ¶¶ 11-12.

When an inmate alleges a delay of medical treatment violated his constitutional rights, he "must place verifying medical evidence in the record to establish the detrimental effect of delay in treatment." *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005) (internal quotations and citations omitted).

Plaintiff has not submitted any verifying medical evidence establishing a detrimental effect of the delay between the incident with Corporal Smith and his examine by Nurse

25

Williams on May 22, 2010.  Even though the parties disagree on the exact time Nurse

Williams examined Plaintiff, it is undisputed that it was within three hours of the incident with

Corporal Smith.  At the time of the exam, Nurse Williams found that Plaintiff had "no

apparent or obvious wounds, bruising, or swelling," and "no sign of distress."  ECF No. 58,

Ex. 1.[9]  Given Nurse Williams assessment, no treatment was warranted and therefore, no

treatment was delayed.  Plaintiff has not pointed to any specific facts to contradict this

evidence. Therefore, Plaintiffs claim regarding a delay in medical care fails as a matter of law.

Accordingly, I recommend Separate Defendants' Motion for Summary Judgment (ECF

No. 60)  be **GRANTED** as to Plaintiffs' denial and delay of medical care claims.

G.     Legal Mail

Plaintiff claims that correctional officers interfered with two of his outgoing legal letters

to this Court.

The Court construes this claim to be one of denial of access to the courts.  Plaintiff is

entitled to some ability to draft, notarize, and mail his legal complaints and related

correspondence. *Bounds v. Smith,* 430 U.S. 817, 824-5 (1977);  *see also Myers v. Hundley,*

101 F.3d 542, 544 (8th Cir.1996) (citing *Lewis v. Casey,* 518 U.S. 343, 350-1 (1996)).

However, an inmate has no standing to pursue an access claim unless he can demonstrate that

he suffered prejudice or actual injury as a result of the prison officials' conduct.  *See Lewis,*,

518 U.S. at 351-2; *see also Farver v. Vilches,* 155 F.3d 978, 979-980 (8th Cir. 1998) (per

curiam); *Grady v. Wilken*, 735 F.2d 303, 305-6 (8th Cir. 1984) (the plaintiff's failure to show

---

[9] The Court notes that Plaintiff disagrees with Nurse Williams' assessment but as discussed *supra* Plaintiff has not presented any facts to contradict Nurse Williams'  notes.

that a twenty (20) day denial of mail privileges prejudiced his ongoing lawsuit resulted in the dismissal of his access to courts claim).

Here, Plaintiff claims that two pieces of his outgoing legal mail were stopped by unknown correctional officers on May 25 and May 27, 2010 respectively.  ECF No. 67, ¶ 19. Plaintiff also claims the officers would not come to pick up his legal mail for three or four days at a time.  ECF No. 67, ¶ 20.  Plaintiff states he did not miss any filing or court deadlines because of this interference.  ECF No. 67, ¶ 21.

Plaintiff has failed to allege an injury, in the form of impeding his access to the courts or prejudicing him in this or any other action, amounting to a constitutional violation.  *Lewis*, 518 U.S. at 351-2.  Therefore, Plaintiff's claim regarding his legal mail fails as a matter of law.

Accordingly, I recommend Separate Defendants Motion for Summary Judgment (ECF No. 60) be **GRANTED** as to Plaintiff's claims regarding his legal mail.

H.    Medication

Nurse Williams argues that any claims that she withheld medication from Plaintiff in retaliation for his prior lawsuit is barred by *res judicata* as those claims were litigated in Plaintiff's prior lawsuit Civil No. 10-cv-4053.  The Court does not construe Plaintiff's reference—in his second Supplement to First Complaint—to his medication as a retaliation claim against Nurse Williams.  In this Supplement, Plaintiff requests "that you can have me moved from the jail or have it that Nurse Williams the defendant have no more contact with my 'Meds. . . .'"  ECF No. 50, p. 3.  Plaintiff goes on to make allegations about Nurse Williams mishandling his medication, but he does not mention retaliation in those allegations. The Court construes these allegations to be support for Plaintiff's injunctive relief request to

have Nurse Williams "have no more contact" with his medication.

Plaintiff is no longer incarcerated at the MCDC, and therefore, any claim for injunctive relief regarding Nurse Williams handling Plaintiff's medication is moot.

## IV.   CONCLUSION

For the reasons stated above, I recommend that Nurse Williams' Motion for Summary Judgment (ECF No. 57) be **GRANTED** in part and **DENIED** in part.  Specifically, the Motion (ECF No. 57) should be granted with respect to: (1) all official capacity claims against Nurse Williams; (2) Plaintiff's retaliation claim regarding denial of medical care; and (3) Plaintiff's retaliation claim regarding denial of injury report.  This leaves for later resolution the individual capacity claims against Nurse Williams regarding retaliation: (1) by enticing inmates to attack Plaintiff; and (2) locking Plaintiff down in the "Super-Max."  I also recommend that Separate Defendants' Motion for Summary Judgment (ECF No. 60) be **GRANTED** in part and **DENIED** in part.  Specifically, the Motion (ECF No. 60) should be granted with respect to: (1) all official capacity claims against all Separate Defendants; (2) all individual claims against Corporal Kelli Lafayette, and Corporal Lafayette should be dismissed; (3) all individual capacity claims of failure to protect against all Separate Defendants; (4) all individual capacity claims against Officer Sonya Smith, and Officer Sonya Smith should be dismissed; (5) all individual capacity claims of delay and denial of medical care against all Separate Defendants; and (6) all individual capacity claims regarding legal mail against all Separate Defendants.  This leaves for latter resolution the individual capacity claims of (1) retaliation against Warden Gary Turner; and (2) excessive force against Corporal Tracey Smith.

**The parties have fourteen days from receipt of the report and recommendation in**

which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 14th day of August 2012.


/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE